UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE QUINONES,

     Petitioner,

-vs-                                 Case No.  6:11-cv-1218-Orl-28KRS

SECRETARY, DEPARTMENT
  OF CORRECTIONS, et al.,

     Respondents.

_____/

## ORDER

     Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 24).  Petitioner filed a reply to the response (Doc. No. 30).

     Petitioner alleges three claims for relief in his habeas petition:  (1) trial counsel was ineffective for failing to investigate and depose certain witnesses and for threatening Petitioner "when he exposed these shortcomings to the trial court"; (2) trial counsel was ineffective for failing to move to suppress the suggestive out-of-court identification procedure; and (3) trial counsel was ineffective for failing to properly move for a judgment

of acquittal.

## I.     *Procedural History*

Petitioner was charged by information with one count of robbery with a firearm (count one), one count of armed burglary of a dwelling with a firearm (count two), one count of grand theft (count three), and one count of kidnapping with intent to commit a felony (count four). A jury trial was held, and Petitioner was found guilty of all counts. However, the trial court subsequently dismissed count three as subsumed into count one. The trial court adjudicated Petitioner guilty of the crimes and sentenced him to life imprisonment as to each count, with the sentences to run concurrently. Petitioner filed a direct appeal with the Florida Fifth District Court of Appeal, which affirmed *per curiam*.

Petitioner next filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 with the state trial court, which was denied. Petitioner appealed the denial, and the state appellate court affirmed the denial *per curiam*.

## II.    *Legal Standards*

## A.     *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

2

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1]  *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

---

[1] In considering the "unreasonable application" inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court.  *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.    *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989)

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.   *Analysis*

### A.   *Claim One*

Petitioner states that  trial counsel was ineffective for failing to investigate and depose certain witnesses and for threatening Petitioner "when he exposed these shortcomings to the trial court." *See* Doc. No. 1 at 6.  In this claim, Petitioner alleges that counsel failed to investigate and depose Detective Steve Mendez, a State witness, and that counsel also threatened to tell the trial court that Petitioner had in fact committed the crimes of which he was charged.  In addition, Petitioner states that counsel labored under a conflict of interest that caused him to not investigate this case.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the claim was refuted by the record.

The record reveals that, just prior to the start of the trial, the following exchange occurred:

THE COURT:  Is there an issue of depositions?

5

MR. IENNACO [Petitioner's counsel]:  I don't believe so, no.

THE CLERK: We need to arraign him.

MS. DAVIS [the Prosecutor]:  We want to hear – I know, but I want to hear Mr. Quinones say for the purposes of the record in case he is convicted.

THE COURT:  Mr. Quinones.

THE DEFENDANT: Yes, sir.

THE COURT:  Your attorney had said you asked him not to take depos; is that correct?

THE DEFENDANT: Yes, sir.

MR. IENNACO: Judge, not specifically not to take depos, but just not to do anything specific.

THE COURT:  Is that what you wanted him to do or not do?

THE DEFENDANT: Yes, sir. I am happy with anything he has done so far.

THE COURT: Are you satisfied with his services so far?

THE DEFENDANT: Yes.

THE COURT:  And the fact he didn't take depos, you are not upset about and you are basically waiving them; is that correct?

THE DEFENDANT: It was just a misunderstanding, sir.

*See* Appendix B, Transcript of Trial at 3-4.

It is apparent that Petitioner did not want his counsel to take depositions or "anything specific", that he waived the taking of depositions, and that he was "happy" with counsel's actions in the case.  Defendants are bound by the statements made under

6

oath, *Henry v. State*, 920 So. 2d 1245, 1246 (Fla. 5th DCA 2006), and Petitioner provided no indication that he had been coerced or threatened in any manner when answering the trial court's questions.

Interestingly, Petitioner also argues that he had advised counsel not to investigate the case "based on [his] newfound conversion to Christianity, and his belief that God would answer [his] prayers and deliver [him] from incarceration." *See* Doc. No. 21 at 8-9. According to Petitioner, his reasoning in waiving counsel's "duty to investigate was not based on a rational, informed, and intelligent decision." *Id.* at 9. Thus, Petitioner appears to acknowledge that he waived any investigation of his case by counsel and that this decision was based on his religious conversion and, ostensibly, not based on any threats by counsel. In any event, aside from vague and conclusory allegations, Petitioner presents no evidence demonstrating that counsel should have investigated Petitioner's ability to make a rational decision regarding waiving depositions.

The Court further notes that Petitioner contends that Detective Mendez would have revealed to counsel the existence of a DVD showing Petitioner engaged in conversation with his girlfriend in which some incriminating statements were made. However, the trial court excluded the DVD and its contents. Therefore, since the DVD would actually have been harmful to Petitioner's case, there has been no showing of prejudice with regard to this matter.

Finally, the Court finds that Petitioner has not shown that counsel labored under a conflict of interest. First, it is apparent from the record that Petitioner himself decided that

7

there should be no investigation.  Next, to establish a Sixth Amendment violation, the petitioner must demonstrate both that an actual conflict of interest existed and that such conflict adversely affected the adequacy of his (or her) representation.  *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987).  Petitioner has failed to demonstrate either that an actual conflict of interest existed in this case or that any such conflict adversely affected the adequacy of his representation.

Consequently, the Court finds that Petitioner has failed to demonstrate that counsel acted deficiently with regard to this matter or that he sustained prejudice.  As such, Petitioner has not shown that the state court's denial of this claim was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.

**B.**    ***Claim Two***

Petitioner states that trial counsel was ineffective for failing to move to suppress the suggestive out-of-court identification procedure.  According to Petitioner, the "suggestive photo-pak included two white males, three very light skinned Hispanics and the Defendant, who is a medium to dark skinned Hispanic."  *See* Doc. No. 1 at 13.  Since the victim "initially described the perpetrators as 'black,'" the "suggestive" lineup drew "the witness' attention to petitioner as the only likely suspect."  *See* Doc. No. 21 at 20.  This claim was raised in Petitioner's Rule 3.850 motion and was denied because the lineup was not suggestive.

The trial court found that the claim was refuted by the record:

> It is impossible to conclude from the photographs in the lineup (color copy attached) the ethnicity of the participants. The lineup does reveal that none of the individuals in the lineup are strikingly dissimilar from any others. There is nothing in the lineup that would indicate that it was unnecessarily suggestive or that competent counsel would have felt there were grounds to exclude the identification based upon it.

*See* Appendix K, Order Denying Motion for Postconviction Relief at 3-4. Aside from vague and conclusory allegations, Petitioner has presented no probative evidence to contradict the trial court's factual determination that the photographs were not dissimilar, that the trial court unreasonably applied federal law, or that the trial court made an unreasonable determination of the facts in light of the facts before it. The trial court was able to review the original lineup, and, because there is no evidence that indicates the trial court's factual determination was unreasonable, Petitioner fails to meet his burden. Further, Petitioner fails to establish that the trial court misapplied federal law in finding that trial counsel was not ineffective.

In addition, even if the photo lineup was suggestive, the victim testified that the incident occurred during the daytime and that, during the incident, she had an unobstructed view of the perpetrator from a close distance. *See* Appendix B, Transcript of Trial at 48-50. The victim identified Petitioner from the photographic lineup provided to her by law enforcement, and she was not influenced by anyone during the process. *Id.* at 59-60. Therefore, there has been no showing of prejudice, and this ground fails.

The Court notes that Petitioner also mentions that, during the direct examination of Rosemary Steinbach, who never saw Petitioner, the prosecutor identified Petitioner as wearing a "white shirt." Petitioner further states that, during the direct examination of the

victim, the victim referred to Petitioner as wearing a "white shirt." *Id.* at 37, 49. According to Petitioner, the "white shirt" reference gave the jury "the perception of two witness' positive identifications of Petitioner, in the white shirt, when in fact there was only one." *See* Doc. No. 21 at 23.

However, Petitioner fails to indicate what objection counsel could have raised to this matter. The prosecutor merely asked Ms. Steinbach whether she knew Petitioner, who was identified as "the gentleman over here in the white shirt." *See* Appendix B, Transcript of Trial at 37. It was not a leading question, and it did not suggest that she knew Petitioner. The victim identified Petitioner as the perpetrator and noted that he was wearing a "white shirt." *Id.* at 49. Petitioner's counsel was not ineffective for failing to raise an objection to this matter.

Under the circumstances, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

C.    *Claim Three*

Petitioner states that trial counsel was ineffective for failing to properly move for a judgment of acquittal. He contends that counsel's argument was "bare bones" and that counsel should have challenged the sufficiency of the evidence and argued that the State's case "rested solely on the misidentification of the victim and the uncorroborated testimony of its other witnesses." *See* Doc. No. 1 at 17. This claim was raised in Petitioner's Rule 3.850

10

motion and was denied because there no legal basis to present these arguments.

This claim is without merit. The victim positively identified Petitioner as the person that tied her up and threatened to kill her, and she had an unobstructed view of his face. *See* Appendix B, Transcript of Trial at 48-50. The weight of the evidence and the witnesses' credibility are questions solely for the jury. *Williams v. State*, 967 So. 2d 735, 755 (Fla. 2007). Thus, counsel had no basis to move for a judgment of acquittal based on the arguments suggested by Petitioner. As such, Petitioner has failed to demonstrate that counsel acted deficiently or that he sustained prejudice. Under the circumstances, the state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Jose Quinones is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a

11

constitutional right.[3]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

    **DONE AND ORDERED** in Chambers in Orlando, Florida, this 28 day of

November, 2012.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-2 11/28
Counsel of Record
Jose Quinones

---

[3]Pursuant to Rule 11 of the *Rules Governing Section 2254 Cases In the United States District Courts,*

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.  A motion to reconsider a denial does not extend the time to appeal.